IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DTS TRUCK DIVISION COMPANY, a Missouri corporation, DISTRIBUTION TRANSPORTATION SERVICES COMPANY, a Missouri corporation, CENTERLINE LEASING COMPANY, a Missouri corporation, and THOMAS J. KOMADINA, SR.,<br><br>　　　　　Defendants. | Case No.   4:10-cv-01559 |

### EMERGENCY VERIFIED MOTION FOR APPOINTMENT OF A RECEIVER

COMES NOW General Electric Capital Corporation ("GECC"), by its undersigned counsel, and for its Emergency Verified Motion for Appointment of a Receiver states as follows:

### PARTIES

1.　　General Electric Capital Corporation ("GECC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Connecticut.

2.　　Defendant DTS Truck Division Company ("DTS Truck") is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the State of Missouri.  Defendant DTS Truck maintains its place of business at 755 Parr Road, Wentzville, Missouri 63385.

3.　　Defendant Distribution Transportation Services Company ("DTSC") is a corporation organized and existing under the laws of the State of Missouri with its principal

place of business in the State of Missouri.  Defendant DTSC maintains its place of business at 755 Parr Road, Wentzville, Missouri 63385.

4.  Defendant Centerline Leasing Company ("Centerline") is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in the State of Missouri.  Defendant Centerline maintains its place of business at 755 Parr Road, Wentzville, Missouri 63385.

5.  Defendant Thomas J. Komadina, Sr. ("Komadina") is a citizen and resident of the State of Missouri.  Defendant Komadina resides at 756 Grandpas Lane, St. Paul, Missouri 63366.

6.  DTS Truck and DTSC are engaged in the transportation services business.  DTS Truck operates the trucking business and DTSC serves as a transportation property brokerage company.  Centerline leases tractors and trailers to DTS Truck, DTSC, and other related entities.  The Living Trust of Thomas J. Komadina, Sr. is the sole shareholder of DTS Truck, DTSC and Centerline.

## INDEBTEDNESS AND COLLATERAL

7.  Prior to institution of these proceedings, DTS Truck executed and delivered to CitiCapital Commercial Corporation ("CCC"), predecessor to GECC, a Transportation Accounts Financing and Security Agreement, dated as of July 23, 2004, as amended by that certain Amendment One to Transportation Accounts Financing and Security Agreement, dated October 17, 2005 and effective as of August 19, 2005, that certain Amendment Two to Transportation Accounts Financing and Security Agreement, dated September 19, 2007 and effective as of July 23, 2007, and that certain Amendment Three to Transportation Accounts Financing and Security Agreement, dated December 30, 2008 and effective as of January 1, 2009 (as further amended, supplemented, restated or otherwise modified from time to time, the "DTS

Truck Financing Agreement"). The DTS Truck Financing Agreement created a revolving credit facility for DTS Truck with a maximum advance of $2,000,000.00. A copy of the DTS Truck Financing Agreement is attached to the Complaint as Exhibit 1.

8. Prior to institution of these proceedings, DTSC executed and delivered to CCC a Transportation Accounts Financing and Security Agreement, dated as of July 23, 2004, as amended by that certain Amendment One to Transportation Accounts Financing and Security Agreement, dated October 17, 2005 and effective as of August 19, 2005, that certain Amendment Two to Transportation Accounts Financing and Security Agreement, dated September 19, 2007 and effective as of July 23, 2007, and that certain Amendment Three to Transportation Accounts Financing and Security Agreement, dated December 30, 2008 and effective as of January 1, 2009 (as further amended, supplemented, restated or otherwise modified from time to time, the "DTSC Financing Agreement"). The DTSC Financing Agreement created a revolving credit facility for DTSC with a maximum advance of $1,000,000.00. A copy of the DTSC Financing Agreement is attached to the Complaint as Exhibit 4.

9. To secure the indebtedness due to GECC by DTS Truck and DTSC under the DTS Truck Financing Agreement and the DTSC Financing Agreement, DTS Truck and DTSC granted to GECC a lien and security interest in the following personal property (the "Collateral"):

> "[A]ll present and future accounts; chattel paper, instruments; general intangibles; documents; all assets including, without limitation, inventory, equipment of every kind and description; furniture and fixtures; deposit accounts; money, investment property; letters of credit; notes; tax refunds and insurance proceeds, all as defined in the Uniform Commercial Code and all proceeds thereof. There is also included within the term "Collateral" all guarantees, liens and security granted to or held by Borrower with respect to an Account or any other obligation owing to Borrower."

10. GECC perfected its security interest in the Collateral by filing a Uniform Commercial Code financing statement on June 18, 2004 with financing statement no. 20040067025H as to DTS Truck and by filing a Uniform Commercial Code financing statement on June 16, 2004 with financing statement no. 20040066251H as to DTSC .  A copy of the financing statements and other UCC filings relating to DTS Truck are attached to the Complaint as Exhibit 2 and a copy of the financing statements and other UCC filings relating to DTSC are attached to the Complaint as Exhibit 5.

11. The obligations of DTS Truck and DTSC to GECC are guaranteed by Centerline and Thomas J. Komadina, Sr.  See Exhibits 6, 7, 9, and 10 attached to the Complaint.  In addition, DTS Truck has guaranteed the obligations of DTSC to GECC and DTSC has guaranteed the obligations of DTS Truck to GECC.  See Exhibits 8 and 11 to the Complaint.

12. The DTS Truck Financing Agreement and the DTSC Financing Agreement provide that all loans to DTS Truck and DTSC are payable on demand at any time and for any reason with or without the occurrence of an event of default.  See Section 2.02 of the DTS Truck Financing Agreement and the DTSC Financing Agreement.

13. A default has occurred under the DTS Truck Financing Agreement and the DTSC Financing Agreement in that DTS Truck and DTSC have (a) furnished financial statements and information to GECC which were not true and correct; (b) misrepresented to GECC that all Accounts are and were bona fide existing obligations of account debtors created by the rendition of services to the named account debtors and owed in the face amount thereof; (c) misrepresented to GECC that all Accounts are and were valid, legal, enforceable obligations of the account debtors thereof; (d) failed to pay to GECC the amount by which the Receivable Loan Balances exceed eighty-five percent (85%) of the aggregate face amount of Eligible Accounts; and (e) failed to keep

proper books of account in which full, true and correct entries were made of its transactions in accordance with GAAP.

14. On August 18, 2010, GECC gave a written notice to DTS Truck and DTSC that they were in default under the terms and conditions of the DTS Truck Financing Agreement and the DTSC Financing Agreement and made demand for payment. A copy of the written notice is attached to the Complaint as Exhibit 3.

15. As of August 18, 2010, the principal balance due on the DTS Truck Financing Agreement is $1,664,036.06 and the principal balance due on the DTSC Financing Agreement is $997,777.36. In addition, DTS Truck and DTSC are indebted to GECC for interest, late charges and other finance charges, attorneys' fees and other costs of collection (hereinafter referred to as the "Indebtedness").

16. Despite GECC's demand, DTS Truck, DTSC, Centerline and Komadina have failed to pay the Indebtedness.

## GROUNDS FOR APPOINTMENT OF A RECEIVER

17. Federal law controls the decision of whether a receiver should be appointed. *Midwest Sav. Ass'n v. Riverbend Associates*, 724 F.Supp. 661, 662 (CD. Minn. 1989). Though "there is no precise formula for determining when a receiver may be appointed," the Eighth Circuit has delineated a series of factors that the District Court should consider in determining whether the appointment of a receiver is appropriate. The Eighth Circuit stated that the following factors should typically guide the District Court's exercise of discretion:[1] (1) The probability of fraudulent or wrongful conduct on the part of the defendant; *see Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993) (a plaintiff need not

---

[1] A District Court's decision to appoint a receiver is reviewed for abuse of discretion. *Aviation Supply*, 999 F.2d at 317; *Consolidated Rail Corp. v. Fore R.R. Co.*, 861 F.2d 322, 326 (1st Cir. 1988).

SLC-6154232-2

- 5 -

present proof of fraud, but rather, merely the possibility of fraud); *see Consolidated Rail*, 861 F.2d at 326-27;[2] (2) imminent danger that property will be lost or squandered; *Aviation Supply*, 999 F.2d at 316-17; (3) the inadequacy of legal remedies; *id.* at 317; *Consolidated Rail*, 861 F.2d at 327; (4) the likelihood of appointing the receiver will do more good than harm; *Aviation Supply*, 999 F.2d at 317; and (5) the likelihood of a valid claim by the plaintiff. *Id.* at 316.

18.  In the present case, defendants are in the transportation services business.  DTS Truck operates the trucking business and employs the truck drivers.  DTSC serves as a transportation property broker.  Centerline leases the tractors and trailers to DTS Truck, DTSC and other related entities.  According to a spreadsheet provided to GECC by Centerline, Centerline owns or leases approximately 140 tractors and 368 trailers.  These tractors and trailers travel across the United States.  As a result, at any given time a large portion of the rolling stock is outside the St. Louis, Missouri, metropolitan area.

19.  GECC has a security interest in virtually all of the personal property of DTS Truck and DTSC.  The primary collateral securing the obligations to GECC is the accounts receivable.  Under the revolving credit facilities, GECC's loans to DTS Truck and DTSC are based upon "Eligible Accounts."  GECC may lend up to 85% of the Eligible Accounts.  The greater the value of the Eligible Accounts, the more GECC can lend, up to the maximum set forth in the DTS Truck Financing Agreement and the DTSC Financing Agreement.

20.  GECC can satisfy each of the factors commonly used to determine whether a receiver should be appointed:

a.  <u>The existence of a valid claim</u>.  GECC's claim is based upon a written agreement which clearly identifies the rights and obligations of the respective parties.  There will

---

[2] In a diversity action, such as this one, the appointment of a receiver is governed by federal law and federal equitable principles.  *Aviation Supply*, 999 F.2d at 316.

SLC-6154232-2

be no dispute in this case that GECC actually funded the loans to DTS Truck and DTSC under the DTS Truck Financing Agreement and the DTSC Financing Agreement.  As a result of the GECC funding under the DTS Truck Financing Agreement and the DTSC Financing Agreement, GECC is owed the aggregate principal sum of $2,661,813.42 as of August 18, 2010.

      b.    <u>Fraudulent conduct on the part of the defendants</u>.  According to a written report made by Tom Komadina, Jr., the President of DTS Truck and DTSC, on August 9, 2010, the controller of DTS Truck and DTSC admitted a massive fraudulent scheme that included check kiting, forgery, misrepresentations and fraud.  With respect to GECC, the controller admitted that she used fake invoices, duplicate books and records and other artifices to increase the Eligible Accounts reported to GECC to enable DTS Truck and DTSC to obtain unwarranted advances from GECC.  As a result of this fraudulent scheme, DTS Truck and DTSC have borrowed from GECC approximately $1,600,000.00 in excess of the aggregate amount justified under the DTS Financing Agreement and the DTSC Financing Agreement.

      c.    <u>Imminent danger that the property will be lost, concealed, injured, diminished in value or squandered</u>.  After discovery of the fraudulent scheme and the over-advance, DTS Truck and DTSC requested GECC to continue to advance funds for payroll and fuel.[3]  GECC advanced funds on August 12, 2010, and on August 19, 2010, while GECC evaluated the financial condition of DTS Truck and DTSC.  GECC is unwilling to continue to advance funds under the DTS Truck and DTSC revolving credit facilities because of the nature and extent of the defaults, the likelihood of payment of the Indebtedness, and the failure to agree with DTS Truck, DTSC, Centerline and Komadina on the terms of a forbearance agreement.  DTS Truck, DTSC and Centerline do not appear to have a strategy to wind-down the businesses.  GECC has been advised by DTS Truck and DTSC that, as soon as GECC's funding ceases, the

---

[3] Payroll is approximately $90,000.00 per week and fuel is approximately $15,000.00 per day.

SLC-6154232-2

trucks will be parked and the drivers will be laid off.  DTS Truck and DTSC must wind-down their operations in an orderly fashion in order to avoid a scenario where the tractors and trailers are parked at terminals all over the country full of goods scheduled for delivery.  The failure to deliver these goods in a timely fashion may give the customer a claim for damages against DTS Truck and DTSC and a basis for an offset against the receivable that is GECC's collateral.  A shut-down will create significant obstacles to collection of existing accounts receivable and will likely result in a multitude of claims and lawsuits.  Many of these issues can be avoided if a receiver oversees an orderly wind-down of the business and a liquidation of the assets.  Additionally, an orderly wind-down should enable the receiver to locate all of the tractors and trailers and bring them to a central point for liquidation or return to the appropriate secured creditor or lessor.

    d. <u>Inadequacy of available legal remedies</u>.  As soon as the funding for payroll and fuel ceases, the tractors will stop running and the value of the accounts receivable will diminish severely.  There is no available legal remedy to avoid this result.

    e. <u>The probability of harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing the appointment</u>.  There is very little probability of harm to the defendants.  The purpose of the receiver will be to keep and preserve the property of DTS Truck, DTSC and Centerline.  The defendants have already indicated that they will not be able to fund ongoing operations if GECC does not continue to provide financing.  Allowing the company to wind-down under the guidance of a receiver will not cause any harm to DTS Truck, DTSC and Centerline.  On the other hand, GECC will suffer a serious erosion in its collateral if the goods in the tractors are not delivered.

21. GECC's counsel has previously retained Argus Management Corporation ("Argus") to evaluate the assets, operations, cash flow, accounting and financial reporting of DTS Truck and DTSC. Argus provides interim management and advisory services to companies with significant financial and operational issues. Because of its engagement by GECC's counsel, Argus is already familiar with DTS Truck, DTSC and Centerline. Argus is available to assist a receiver in taking control of the assets of DTS Truck, DTSC and Centerline.

WHEREFORE, GECC respectfully requests that this Court enter its order appointing a receiver for the assets of DTS Truck, DTSC, and Centerline, and for such other and further relief as the Court deems just and equitable.

HUSCH BLACKWELL SANDERS LLP


By:  /s/ Gary L. Vincent
Shirley Padmore-Mensah, EDMO No. 58837
Marshall C. Turner, EDMO No. 520618
Gary L. Vincent, EDMO No. 10642
190 Carondelet Plaza, Suite 600
St. Louis, Missouri  63105
Phone:  (314) 480-1727
Fax:     (314) 480-1505
shirley.padmore@huschblackwell.com
marshall.turner@huschblackwell.com
gary.vincent@huschblackwell.com

Attorneys for General Electric Capital Corporation

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was served electronically on this 20th day of August, 2010, on all parties on the Court's ECF notice list.

/s/ Gary L. Vincent

# VERIFICATION

I, James H. Kaufman, of lawful age, being first duly sworn upon my oath, state (a) that I am a _duly authorized signatory_ of General Electric Capital Corporation, the plaintiff herein, (b) that I have read and reviewed the allegations contained in the foregoing Verified Emergency Motion for Appointment of a Receiver and the Complaint and (c) that each one of the allegations contained in the foregoing Verified Emergency Motion for Appointment of a Receiver and the Complaint are true, accurate, and correct to the best of my knowledge, information and belief.

_/s/ James H. Kaufman_
James H. Kaufman

STATE OF _CONNECTICUT_ )
                       )  SS
COUNTY OF _FAIRFIELD_  )

On this _20TH_ day of August, 2010, before me, a Notary Public in and for the above-named County and State, personally appeared James H. Kaufman known to me to be the person who executed the foregoing Verified Emergency Motion for Appointment of Receiver, and acknowledged to me that he/she executed the same of his/her free will and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_/s/ Notary_
Notary Public

My commission expires:
_6/30/2014_